IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| ALMONDNET, INC. and INTENT IQ, LLC,<br><br>        Plaintiffs,<br><br>        v.<br><br>VIANT TECHNOLOGY LLC,<br><br>        Defendant. | Case No. 23-cv-174-MN |

**ALMONDNET'S LETTER BRIEF REGARDING DEFENDANT'S
<u>PRODUCTION OF CORE TECHNICAL DOCUMENTS</u>**

FARNAN LLP
Brian E. Farnan (Bar No. 4089)
Michael J. Farnan (Bar No. 5165)
919 North Market Street, 12th Floor
Wilmington, DE 19801
(302) 777-0300
bfarnan@farnanlaw.com
mfarnan@farnanlaw.com

OF COUNSEL:

Reza Mirzaie
Amy E. Hayden
James A. Milkey
James S. Tsuei
Jonathan Ma
Jason M. Wietholter
Daniel B. Kolko
RUSS, AUGUST & KABAT
12424 Wilshire Boulevard, 12th Floor
Los Angeles, California 90025
Telephone: (310) 826-7474

*Attorneys for Plaintiffs AlmondNet, Inc. and Intent IQ, LLC*

March 25, 2024

Dear Magistrate Judge Hatcher:

      Pursuant to the Court's March 18, 2024 Order, we write to identify the discovery dispute plaintiffs AlmondNet, Inc. and Intent IQ, LLC (collectively, "AlmondNet" or "Plaintiffs") will raise during the April 3, 2024 teleconference. As stated below, AlmondNet respectfully requests that Viant Technology, LLC ("Viant" or "Defendant") be ordered to produce their core technical documents to comply with their obligations under the Orders and rules of this Court.

## I.    Introduction

      AlmondNet alleges that Viant directly, jointly, literally, or equivalently infringes U.S. Patent Nos. 8,775,249 (the "'249 patent"), 7,861,260 (the "'260 patent"), 7,979,307 (the "'307 patent"), and 11,564,015 (the "'015 patent") (collectively, the "Asserted Patents"). *See* D.I. (the Complaint). The accused products are certain digital advertising services made, used, offered for sale, and sold by Viant.

### A.    Defendant Viant's Required Core Technical Document Production

      Pursuant to the Court's Scheduling Order (D.I. 29 ¶ 7(b)) and this Court's Default Standard for Discovery, Including Discovery of Electronically Stored Information ("ESI"), Plaintiffs served its identification of accused products and asserted claims on December 15, 2023, identifying the specific products accused of infringement in this case. *See* Ex. 1. By February 2, 2024, Viant was required to produce "core technical documents related to the accused product(s), sufficient to show how the accused product(s) work(s), including but not limited to non-publicly available operation manuals, product literature, schematics, and specifications." D.I. 29 ¶7(b); *see also* Default Standard ¶4(b). The purpose of this core technical production is, at least in part, to aid Plaintiffs' preparation of its initial infringement contentions, which are due six weeks later. *See* D.I. 29 ¶7(c); *see also* Default Standard ¶4(c).

### B.    Viant Has Failed to Produce a Single Technical Document Related to Products

      Although Defendant has made source code for the accused products available for inspection, this does not comply with the obligation to produce "non-publicly available operation manuals, product literature, schematics, and specifications" and similar internal technical documents showing the operation of the accused products. *See* D.I. 29 ¶7(b); Default Standard ¶ 4(b). The language of both the Scheduling Order and Default Standard make clear that such materials must be included within the production. Indeed, courts in this District have explicitly rejected the position that making source code available for inspection, while withholding all other technical documentation, satisfies a defendant's core technical production obligation. *See, e.g.*, *Princeton Digital Image Corp. v. Konami Digital Entm't Inc.*, 316 F.R.D. 89, 95 n.11 (D. Del. Aug. 31, 2016) ("The Court notes that it does not agree with [defendant]'s alternate position that the motion to compel should also be denied because [defendant] has already made the source code and games themselves available to Plaintiff, and so '[a]ny technical information from [defendant] would necessarily be inferior to the source code.' … This Court's 'Default Standard for Discovery, Including Discovery of Electronically Stored Information (ESI)' states that a plaintiff is entitled to core technical documents '*including but not limited to* operation manuals, product literature, schematics, and specifications.' … **The Court is aware of no rule that states that if a defendant**

***has produced source code, Plaintiff is not entitled to any other 'core technical documents.'***") (cleaned up, second emphasis added); *see also Int'l Bus. Machs. Corp. v. Zynga Inc.*, C.A. 22-00590-GBW, D.I. 78 (D. Del. Dec. 2, 2022) (ordering defendants to "produce source code **and** other core technical documents for all of the accused products in this action, including but not limited to non-publicly available operation manuals, product literature, schematics, and specifications that sufficiently show how the accused products work") (emphasis added). Throughout the course of this discovery dispute, Viant has provided no authority to the contrary.

Viant failed to produce its core technical documents by February 2, 2024, as required by the Court's Order. *See* D.I. 29 ¶7(b). On February 13, 2024: (1) AlmondNet requested that such documents be produced by February 16, 2024; (2) Viant responded that it had "no core technical documents to produce at this time" other than the source code that would be made available once the Protective Order was entered; and (3) AlmondNet replied with its basis for requesting core technical documents notwithstanding Viant's forthcoming source code production. *See* Ex. 2. On February 15, 2024, Viant stood on its objection to producing core technical documents and AlmondNet responded with authority from this District that rejects Viant's position. *Id.* During the parties' February 20, 2024 meet and confer, Viant represented that it was in the process of collecting and reviewing the categories of documents listed in the Court's order as well as the examples of core technical documents that AlmondNet provided to Viant per Viant's request during the call, such as, e.g., documents describing the system architecture and documents relating to features of the accused products, including segment generation, categorization, and how segments are used for targeting. *Id*. (February 20, 2024 email from Kolko to Sundermeir).

On February 26, 2024, contrary to Viant's representation during the parties' February 20, 2024 meet and confer, Viant informed AlmondNet that it was refusing to produce non-source code technical documentation on grounds that "Viant does not maintain in the ordinary course of business up-to-date technical documents that accurately reflect how Viant's system currently works, other than source code." *Id.* AlmondNet explained the prejudice caused by Viant's refusal and requested that the parties address the issue at a lead and local counsel meet and confer. *Id.* Viant continued to stand on its objection in its February 27, 2024 email, providing that "[w]hile Viant may create technical documentation related to the accused products from time to time, those documents become quickly outdated as soon as the source code is updated," and that Viant would not "provide these technical documents with the representation that they are 'core technical documents' that sufficiently and accurately describe the operation of the accused products." *Id.*

During the parties' February 28, 2024 meet and confer, AlmondNet's counsel explained that AlmondNet is not looking for a representation that all of the information in Viant's non-code core technical documents would be an accurate representation of the functionality implemented in Viant's system, and noted that this is typically an issue explored further in discovery including depositions. *Id.* (February 29, 2024, email from Milkey to Sundermeir). AlmondNet asked if Viant could produce the relevant documents without such a representation and Viant's counsel indicated that he would try to provide a response by February 29, 2024. *Id.* Not hearing back, on March 4, 2024, AlmondNet informed Viant of its intention to contact the Court. *Id.* Viant waited until March 5, 2024, to inform AlmondNet that it was unwilling to produce any technical documents even *without* making such a representation. *Id.* To date, Viant has only produced one document in the entire case: a document describing sales figures (VIANT00000001).

Viant's refusal to produce non-code core technical documents is highly prejudicial to AlmondNet's ability to prove up its case. It is generally inefficient to review source code without previously reviewing relevant non-code technical documentation, as such documents would help to identify the key areas to focus on and would speed up and reduce the cost of source code review. In this case, Viant's non-code technical documents would help AlmondNet efficiently review the roughly 1.3 gigabytes of source code that Viant produced across 32,296 files. Viant's failure to provide non-code core technical documents has also prejudiced AlmondNet's ability to prepare its infringement contentions, which were due on March 22, 2024. Viant's argument that it should not have to produce its technical documents because the documents "become quickly outdated" is without merit. AlmondNet has repeatedly explained that it is not asking Viant for a representation that the information contained in the documents would be an up-to-date representation of the functionality implemented in Viant's system. Moreover, this case is not limited to the *current* operation of Viant's accused products; the operation of Viant's accused products throughout the entire discovery period (six years prior to when the complaint was filed) is relevant.

## II. Conclusion

AlmondNet respectfully requests the Court to order Viant to produce its core technical documents for the accused products, including Viant's Identity Graph, Viant's Householding solution, Adelphic Demand Side Platform (DSP), Omnichannel campaigns (including Connected TV, Programmatic Linear TV, Video, In-Game, Mobile, Native, and Display campaigns), the Viant Household ID, Direct Access, Data Platform, Conversion Lift, Cross-Channel, Digital Out-of-Home, Multi-Touch Attribution (MTA), Interest Based Segments, and Custom Segments—"including but not limited to operation manuals, product literature, schematics, and specifications," within 5 days.[1]

Respectfully submitted,

*/s/ Brian E. Farnan*

Brian E. Farnan

cc: Counsel of Record (Via E-Filing)

---

[1] Viant may claim that because it is required to produce documents responsive to discovery requests at a later date, that this dispute is somehow moot or irrelevant. Not so, for several reasons. First, AlmondNet is entitled to production of technical documents *now* (and in fact, has been entitled to production of such documents since February 2, 2024), not when Viant gets around to producing documents in response to requests for production. Second, it is not clear what documents Viant will agree to produce in response to AlmondNet's discovery requests (or when those documents will be produced). Finally, a ruling that Viant may wait to provide technical documents until documents are ultimately produced in response to requests for production would set a precedent allowing defendants in future cases to flaunt the requirements of the core technical document production required by the Delaware Default Standard for Discovery (available at https://www.ded.uscourts.gov/sites/ded/files/pages/Electronic%20Discovery%20Default%20Standard_0.pdf), effectively making the requirement of a core technical document production meaningless.